# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

JANNA M. BANKS                    CASE NO. 2:19-CV-00898

VERSUS                            JUDGE TERRY A. DOUGHTY

WAITR HOLDINGS, INC.              MAG. JUDGE KATHLEEN KAY

## RULING

Pending before the Court is Defendant Waitr Holdings, Inc.'s ("Waitr") Motion to Compel Arbitration and Dismiss Collective Action Complaint [Doc. No. 4]. Plaintiff Janna M. Banks ("Banks") filed an opposition memorandum. [Doc. No. 7]. Waitr filed a reply memorandum. [Doc. No. 10].

For the following reasons, the Motion to Compel Arbitration and Dismiss Collective Action Complaint is GRANTED IN PART AND DENIED IN PART.

## I. FACTS AND PROCEDURAL HISTORY

Waitr is a Louisiana-based technology company that operates an online food order and delivery platform that allows its patrons to use mobile or desktop applications to order food and have it delivered from participating restaurants.

On September 27, 2018, Banks accepted an offer to work for Waitr as a Mobile Restaurant Success Manager. Banks worked in that position from October 5, 2018, until October 2019. She was assigned to the Albany, Georgia and surrounding areas. The primary job responsibilities for Mobile Restaurant Success Managers included (a) "onboarding" new restaurants, (b) instructing restaurant staff in Waitr operations and processes, (c) demonstrating how to process Waitr orders using iPad, (d) inputting and updating menu information, (e)

providing marketing suggestions, (f) record keeping, and (g) receiving and reporting complaints from the restaurants.

In connection with and in consideration for her employment, Banks signed an offer letter. That offer letter contained the following provision:

> In the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree that (i) any and all disputes between you and the Company shall be fully and finally resolved by binding arbitration, (ii) you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration, (iii) all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion and (iv) the arbitration shall provide for adequate discovery.

[Doc. No. 4-2, Declaration of Amy Behne ("Behne Declaration"), Exh. 1, ¶ 5 & Tab A].

On November 16, 2018, Waiter distributed an Agreement to Arbitrate Claims. This agreement was emailed to Banks at her @waitrapp.com email address. That Agreement provides as follows:

> In consideration of the at-will employment relationship between Waitr, Inc. and/or Waitr Holdings, Inc. ("Employer") and Employee and the mutual desire of the parties to enter into this Agreement to Arbitrate Claims ("Agreement"), the parties hereby agree that any and all disputes, claims or controversies between the parties, including but not limited to any dispute arising out of or relating to this Agreement, the employment relationship between the parties, or the formation or termination of the employment relationship, or which arise after the termination of the employment relationship, which are not resolved by their mutual agreement shall be resolved by final and binding arbitration by a neutral arbitrator.
>
> . . .
>
> The claims covered by this Agreement include, but are not limited to, claims for . . . violation of any local, state, or federal constitution, statute, law, ordinance or regulation . . . wages, overtime, premiums, gratuities, tips, service/administrative charges, or any other compensation due; penalties . . . .

[Doc. No. 4-2, Behne Declaration, Exh. 1, ¶ 7 & Tab B].

The Agreement to Arbitrate Claims further provides:

**I ACKNOWLEDGE THAT I HAVE HAD AN OPPORTUNITY TO REVIEW AND ASK QUESTIONS CONCERNING THIS AGREEMENT AS A CONDITION OF EMPLOYMENT. I UNDERSTAND THAT I AM PERMITTED TO TAKE THIS AGREEMENT WITH ME AND REVIEW IT WITH AN ATTORNEY OF MY CHOICE IF I SO DESIRE. I FURTHER UNDERSTAND THAT BY CONTINUING TO WORK FOR COMPANY, MY CONTINUED EMPLOYMENT WILL BE CONSIDERED ACCEPTANCE OF THE AGREEMENT, EVEN WITHOUT SIGNATURE.**

*Id.* (emphasis in original). The Agreement to Arbitrate Claims expressly applies only to disputes that otherwise would be resolved in a court of law; it does not extend to claims or matters that may be brought before an administrative agency or purport to limit the employee's rights before administrative agencies. *Id.*

Pursuant to the Agreement to Arbitrate Claims, arbitration proceedings are to be held within geographic proximity to the employee; the arbitrator is to be selected by mutual agreement of the parties; and Waitr agrees to pay the arbitrator's and arbitration fees. *Id.* The Agreement to Arbitrate Claims provides for the same rights to conduct discovery, bring dispositive motions, and submit evidence and call witnesses that the parties would enjoy in a court of law. *Id.*

However, the Agreement to Arbitrate Claims also provides:

**BY EMPLOYEE'S CONTINUED EMPLOYMENT WITH THE COMPANY, THE EMPLOYER AND EMPLOYEE AGREE THAT EACH MAY BRING AND PURSUE CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITIES, AND MAY NOT BRING, PURSUE OR ACT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE OR COLLECTIVE PROCEEDINGS. THE PARTIES FURTHER AGREE THAT NEITHER PARTY MAY BRING, PURSUE, OR ACT AS A PLAINTIFF OR REPRESENTATIVE IN ANY PURPORTED REPRESENTATIVE PROCEEDING OR ACTION, OR OTHERWISE PARTICIPATE IN ANY SUCH REPRESENTATIVE PROCEEDING OR ACTION OTHER THAN ON AN INDIVIDUAL BASIS EXCEPT TO THE EXTENT THIS PROVISION IS UNENFORCEABLE AS A MATTER OF LAW.**

*Id.* (emphasis in original).

Banks did not sign the Agreement to Arbitrate Claims, but does not deny that she received it. Banks never made any objection to or refused any of the terms in the offer letter or the Agreement to Arbitrate Claims.

On July 12, 2019, Banks filed her "FLSA Overtime Complaint" in this Court alleging that Waitr has committed violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"). [Doc. No. 1]. Specifically, Banks contends that Waitr improperly classified her as an employee exempt from the FLSA overtime provisions and failed to pay her overtime compensation for hours worked in excess of 40 each work week. Banks seeks compensation, benefits, damages, attorneys' fees and costs, interest, and other relief. In addition to her individual relief, however, Banks also seeks to represent a collection of "similarly situated employees" in a collective action under 29 U.S.C. § 216(b).

On October 1, 2019, Waitr filed the instant motion. The motion is now fully briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. ("FAA"), is the substantive law controlling the validity and enforcement of arbitration agreements. *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 473 (5th Cir. 2002). The FAA provides that written agreements to settle controversies by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Walton*, 298 F.3d at 473. Additionally, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner

provided for in such agreement." 9 U.S.C. § 4.  However, the FAA also has a "saving clause [that] allows courts to refuse to enforce arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting § 2).  "The clause 'permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"  *Id.* (quoting *ATT Mobility, LLC* v. *Concepcion*, 563 U.S. 333, 339 (2011)).

Courts consider two factors in ruling on a motion to compel arbitration: "(1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Painewebber Inc. v. Chase Manhattan Private Bank (Switz.),* 260 F.3d 453, 462 (5th Cir. 2001) (internal quotation marks and citation omitted); *see also Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014) (quoting *Sherer v. Green Tree Servicing, LLC*, 548 F.3d 379, 381 (5th Cir. 2008).  "[T]here is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)); *see also* 9 U.S.C. § 4.

### A.  Was There an Agreement to Arbitrate?

"The first step of the analysis—the validity of an agreement—is governed by state law contract principles."  *Sharpe*, 769 F.3d at 914 (citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)). Under Louisiana law, parties may reciprocally bind themselves to arbitration agreements. La Civ. Code Ann. arts. 3099–3100 (2015). Such agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." La. Stat. Ann. § 9:4201 (2009).

It is undisputed that Banks signed the offer letter on or about September 27, 2018, and it contained an arbitration agreement; that Banks received the Agreement to Arbitrate Claims which was sent via email on or about November 16, 2018; that Banks continued her employment after receipt of the Agreement to Arbitrate; and that Banks failed to raise any objections to the Agreement to Arbitrate or to the original arbitration provisions prior to filing this lawsuit.

However, Banks contends that the Court should not compel arbitration because neither the offer letter nor the Agreement to Arbitrate Claims "contains a presently enforceable agreement to arbitrate." [Doc. No. 7, p. 2]. Expounding on this premise, Banks argues that the initial offer letter addressed only claims "arising out of the employment relationship" and therefore should not include statutory claims under the FLSA. *Id.* Bank contends that courts have refused to enforce the arbitration of statutory claims based on arbitration agreements in collective bargaining agreements unless the agreements specifically state the intention to cover statutory claims. She argues that the same rule should apply to private agreements.

With regard to the Agreement to Arbitrate Claims, Banks argued that she did not accept the agreement. Although there was a way for Waitr to email employees, so that the employee was acknowledged and accepted, it did not use this method, instead sending out a mass email. In the recent Supreme Court case, *Epic*, Banks points out that the majority assumed, but did not decide, that assent to arbitration can be inferred from continued employment and cites to Justice Ginsberg's dissent in that case. Banks further admits that there are two decisions, one from the Fifth Circuit and one from the Eastern District of Louisiana, in which the courts found that Louisiana contract principles did not require written acceptance of an arbitration agreement to be enforceable, but argues that these cases are factually distinguishable.

Finally, Banks contends that the arbitration agreements are unenforceable on other grounds. Banks argues that they should be deemed unenforceable because she had a lack of bargaining power. She also argues that the Agreement to Arbitrate Claims is void as against public policy because it is designed to "prevent or obstruct the assertion of valid wage claims in a pending or threatened FLSA collective action for the Driver wage violations." [Doc. No. 7, p. 11].

The Court rejects each of these arguments. The Court considers both the offer letter and the Agreement to Arbitrate Claims.

### 1. September 27, 2018 Offer Letter

First, the Court finds that Banks entered into an arbitration agreement with Waitr on the basis of the September 27, 2018 offer letter. There is simply no dispute that Banks received the offer letter containing the arbitration provision, that she reviewed that letter, and that she signed that letter, making it a term of her employment. The parties had capacity to contract; there was mutual consent; there was an object (the terms of employment, including arbitration of related disputes); and there was a lawful purpose. *See* LA. CIV. CODE ARTS. 1918, 1927, 1966, and 1971. Therefore, under Louisiana law, there was a valid, enforceable contract.

Further, none of Banks' argument undermine the validity of the formation of that contract. Contrary to Banks' argument, there is a distinction between arbitration clauses in collective bargaining agreements and those affecting employees individually. Courts have clearly made this distinction. As the Supreme Court has explained:

> In [*Alexander v.] Gardner–Denver [Co*., 415 U.S. 36, 94 S. Ct. 1011, 39 L.Ed.2d 147 (1974), the issue was whether a discharged employee whose grievance had been arbitrated pursuant to an arbitration clause in a collective-bargaining agreement was precluded from subsequently bringing a Title VII action based upon the conduct that was the subject of the grievance. In holding that the employee was not foreclosed from bringing the Title VII claim, **we stressed that**

> **an employee's contractual rights under a collective-bargaining agreement are distinct from the employee's statutory Title VII rights.**

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33–34 (1991) (emphasis added). The Supreme Court then further explained that, "[i]n holding that the statutory claims there were not precluded, we noted, . . . the difference between contractual rights under a collective-bargaining agreement and individual statutory rights, the potential disparity in interests between a union and an employee, and the limited authority and power of labor arbitrators." *Id.* at 34 (quoting *Gardner-Denver*, 415 U.S. at 49-50). "An important concern . . .was the tension between collective representation and individual statutory rights, a concern not present" when an individual is required to arbitrate statutory claims under the FAA. *See id.* [1]; *cf. Ibarra v. United Parcel Serv.*, 695 F.3d 354 (5th Cir. 2012) (applying *Gardner-Denver*).

Additionally, Banks' arguments that statutory claims are not subject to arbitration agreement and that arbitration of such claims is against public policy are equally unavailing. *See Gilmer*, 500 U.S. at 26 ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."). While it is true that prospective employees may have unequal bargaining power, Banks could have had the offer letter reviewed by an attorney or other knowledgeable person if she wished. She also had the right to refuse employment with Waitr if she found the arbitration provisions unacceptable. The Court cannot say that it would be unconscionable to enforce the terms of the offer letter.

Moreover, Banks' construction of the offer letter's terms so as to preclude arbitration of statutory claims is both inconsistent with the case law and ignores the plain language of the letter

---

[1] The Court would also note that the Supreme Court has since upheld arbitration of statutory claims even under a collective bargaining agreement if the agreement "clearly and unmistakably" requires union members to arbitrate. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009).

itself.  The arbitration of claims is not limited to those "arising out of the employment relationship," but addresses "any dispute or claim **relating to** or arising out of our employment relationship."  [Doc. No. 4-2, Behne Declaration, Exh. 1, ¶ 5 & Tab A (emphasis added)].  Such claims are subject to arbitration.  *See generally Baricuatro v. Indus. Personnel and Mgmt. Servs., Inc.*, 927 F.Supp.2d 348, 371 (E.D. La. 2013); *Perez v. Lemarroy*, 592 F.Supp.2d 924, 936 (S.D. Tex. 2008).[2]

### 2.    The November 16, 2018 Agreement to Arbitrate Claims

The Court finds that the Agreement to Arbitrate Claims is also a valid, enforceable contract.  Banks has never denied that she received the email and attachments and she continued her employment with Waitr after receipt.  Under Louisiana law, Banks' continued employment is sufficient to constitute acceptance of the Agreement to Arbitrate Claims.

In the case of *Marino v. Dillard's, Inc.*, 413 F.3d 530, 532–33 (5th Cir. 2005), the Fifth Circuit enforced an arbitration agreement against a former employee who had received the agreement, but had not accepted the agreement in writing.  The *Marino* Court explained:

> . . . Louisiana state courts recognize that contract law does not require written acceptance of an arbitration agreement. For example, in *Hurley v. Fox*, the Louisiana Court of Appeal held that the Louisiana state arbitration law—which tracks the language of the FAA and, like the FAA, requires arbitration agreements to be in writing—"does not require that the written agreement to arbitrate be signed by the parties." 520 So.2d 467, 467 (La. Ct. App. 4 Cir. 2/10/88) (citing *Cook v. AAA Worldwide Travel Agency*, 352 So.2d 243 (La. Ct. App. 4 Cir. 9/8/77), rev'd on other grounds, 360 So.2d 839 (La.1978)). The court found it "necessary ... to distinguish between the requirement that an agreement be in writing and the requirement that an agreement be signed. An agreement may be written and the consent thereto may be made orally or by the action or inaction of the parties, thus no signing of the writing is required." *Id.* at 469 (emphasis added). *See also Alford v. Johnson Rice & Co.*, LLC, 773 So.2d 255, 258 (La. App. 4 Cir. 11/15/00) (concluding that an arbitration agreement governed by the FAA does not have to be signed); *In re Succession of Taravella*, 734 So.2d 149, 151 (La. App. 5 Cir. 4/27/99) ("When an agreement [to arbitrate] lacks a

---

[2] Although this case applies Texas law, the Court finds no reason that it would not be equally applicable under Louisiana law.

signature, the actions and the conduct of the party or parties, who did not sign, may show the effect or validity of the agreement.").

413 F.3d at 532-33. While the Fifth Circuit acknowledged that "Comment (b) to Article 1927 . . . . 'reflects the view of the Louisiana jurisprudence that when special formalities are prescribed for a contract the same formalities are required for an offer or acceptance intended to form that contract.'" *Id*. (quoting La. Civ. Code art. 1927, cmt. (b)). The Fifth Circuit then pointed out that "[t]he plain language of Article 1927, however, permits offer and acceptance to be made orally, in writing, or by action or inaction unless the law or the offer itself prescribes certain formalities for the offer and acceptance of a specific contract." *Id.* The Court therefore applied the plain language of the statute.

While Banks attempts to distinguish *Marino*, the only factual difference is that Marino signed a written acknowledgement of receipt. That fact is a distinction without a difference when it is undisputed that Banks, too, received the Agreement to Arbitrate Claims. She continued her employment and did so without raising any objection to the Agreement to Arbitrate Claims. The agreement is enforceable.[3]

Finally, the Court has addressed Banks' claims that arbitration of the claims is against public policy, and that analysis applies to the Agreement to Arbitrate Claims as well. In addition, Banks' argument that the Agreement to Arbitrate Claims is being enforced to prevent drivers from asserting valid FLSA wage claims is inapplicable here because Banks was **not** a driver for Waitr and has no standing to assert claims on behalf of drivers. Louisiana is an

---

[3] The parties also cite to *Danove v. Davila*, No. 11-3173, 2012 WL 6554073 (E.D. La. 12/14/12). Waitr contends that it supports the Motion to Compel Arbitration; Banks contends that it is factually distinguishable. *Danove* relies on and cites to *Marino* and, in this way, supports Waitr's motion. However, in that case, Danove affirmatively claimed that her signature had been forged on the dispute resolution policy and acknowledgment of receipt. There is no such claim here. Banks does not deny receiving the Agreement to Arbitrate Claims; she claims only that she did not sign it. She certainly does not claim that the company actively forged her signature.

employment at will state, and Banks was free to terminate her employment with Waitr and seek employment conditions that she found more advantageous or agreeable. *See Stadtlander v. Ryan's Family Steakhouses, Inc.,* 34,384 (La. App. 2 Cir. 4/4/01), 794 So. 2d 881, 890, writ denied, 2001-1327 (La. 6/22/01), 794 So. 2d 790 (citing *Rogers v. Brown*, 986 F. Supp. 354, 359 (M.D. La. 1997); *Welch v. A.G. Edwards & Sons, Inc.*, 95–2085, 95–2086 (La. App. 4th Cir. 5/15/96), 677 So.2d 520.) (. . . "we conclude that the worker, who could have found a similar position elsewhere, could have avoided the arbitration agreement had she objected to it by simply choosing to work elsewhere.")

Having determined that Banks entered into arbitration agreements with Waitr under the September 27, 2018 offer letter and November 16, 2018 Agreement to Arbitrate Claims, the Court reviews the inclusion of Banks' FLSA claims.

**B. Are Banks' FLSA Claims within the Scope of the Agreements**

Although there is some overlap, the Court must now turn to the second part of the analysis: whether Banks' FLSA claims are within the scope of the September 27, 2018 Offer Letter and the November 16, 2018 Agreement to Arbitrate Claims. The Court finds that they are.

As discussed above, the September 27, 2018, arbitration agreement provisions apply to "any dispute or claim relating to or arising out of our employment relationship." [Doc. No. 4-2, Behne, Exh. 1, ¶ 5 & Tab A]. Likewise, the Agreement to Arbitrate Claims provides that "the parties hereby agree that any and all disputes, claims or controversies between the parties, including but not limited to any dispute arising out of or relating to this Agreement, the employment relationship between the parties, or the formation or termination of the employment relationship, or which arise after the termination of the employment relationship,

which are not resolved by their mutual agreement shall be resolved by final and binding arbitration by a neutral arbitrator." [Doc. No. 4-2, Behne Declaration, Exh. 1, ¶ 7 & Tab B]. The claims listed as "covered by this Agreement include, but are not limited to, claims for . . . violation of any local, state, or federal . . . law, ordinance or regulation . . . [pertaining to] wages, overtime, premiums, gratuities, tips, service/administrative charges, or any other compensation due; penalties . . . ." *Id.* Thus, the Court finds that Banks' FLSA claims are within the scope of the September 27, 2018 offer letter and the November 18, 2018 Agreement to Arbitrate Claims. Finally, under the Agreement to Arbitrate Claims, Banks has waived the right to pursue a collective action, and such waiver is enforceable under *Epic Systems*, 138 S. Ct. at 1627-32 (class and collective waivers in an arbitration agreement are not barred by the provision of the National Labor Relations Act guaranteeing workers the right to engage in concerted activities).

The Court has found that Banks' only claims in this lawsuit under the FLSA are subject to a valid arbitration agreement.

**C.    Administrative Closure**

Where a court finds that all, rather than some or part, of a plaintiff's claims are subject to arbitration, Waitr contends that the claims should be dismissed with prejudice, rather than stay stayed pending arbitration. *See Ruiz v. Donahoe*, 784 F.3d 247, 250 n.3 (5th Cir. 2015); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). However, as a sister court has pointed out, the precedent is not that clear. *See Hanberry v. First Premier Bank*, Civil Action No. 19-10235, 2019 WL 4415267 at *7 (E.D. La. 9/16/19). Rather, the Fifth Circuit later clarified *Alford* in *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307 (5th Cir. 2003), stating: "*Alford* merely held that dismissal was not an abuse of discretion," but that it

"did not hold that dismissal was required."  *Id.* at 310-11; *Hanberry*, 2019 WL 4415267 at *7

(quoting same).

In this case, the Court finds that a third option is appropriate: administrative closure.

Under 9 U.S.C. § 3,

> If any suit or proceeding be brought in any of the courts of the United States
> upon any issue referable to arbitration under an agreement in writing for such
> arbitration, the court in which such suit is pending, upon being satisfied that the
> issue involved in such suit or proceeding is referable to arbitration under such an
> agreement, *shall on application of one of the parties stay the trial of the action
> until such arbitration has been had* in accordance with the terms of the
> agreement, providing the applicant for the stay is not in default in proceeding with
> such arbitration.

(emphasis added).  A review of the JAMS Employment Arbitrations Rules indicate that the

Court *may* be called upon to consider a conflict of law.  See [Doc. No. 4-3, Exh. 2, Rule 4].

Additionally, "[p]roceedings to enforce, confirm, modify or vacate an [arbitrator's] Award will

be controlled by and conducted in conformity with the [FAA] . . . or applicable state law" and

judgment "may be entered in any court having jurisdiction thereof."  [Doc. No. 4-3, Exh. 2, Rule

25].  In light of all these considerations, the Court finds that administrative closure is appropriate,

removing this case from the Court's active docket, but providing the parties an opportunity to

move to re-open the case if prudent or necessary.  *See Mire v. Full Spectrum Lending Inc.*, 389

F.3d 163, 167 (5th Cir. 2004) ("The effect of an administrative closure is no different from a

simple stay, except that it affects the count of active cases pending on the court's docket; i.e.,

administratively closed cases are not counted as active" .  . . .This case still exists on the docket

of the district court and may be reopened upon request of the parties or on the court's own

motion. That situation is the functional equivalent of a stay, not a dismissal, and is thus not an

appealable order under the FAA.").

### III.    CONCLUSION

For these reasons, Waitr's Motion to Compel Arbitration and Dismiss Collective Action Complaint [Doc. No. 9] is **GRANTED IN PART and DENIED IN PART**.  To the extent that Waitr moves to compel arbitration of Banks' claims, the motion is **GRANTED**.  To the extent that Waitr moves for dismissal of those claims with prejudice, however, the motion is **DENIED**. The Clerk of Court is **ORDERED** to administratively terminate this action in his records, without prejudice to the right of the parties to reopen the proceedings.  All pending deadlines and motions are terminated, to be re-urged by counsel when the time is right.  This closure shall not be considered a dismissal of this matter, and should further proceedings in it become necessary or desirable, any party may initiate it in the same manner as if this portion of the Court's Judgment had not been entered.

Monroe, Louisiana, this 17th day of December, 2019.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**